UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RICARDO SANCHEZ, JR.,

      Plaintiff,

      v.

DEPARTMENT OF JUSTICE et al.,

      Defendant.

Civil Action No. 25-1976 (AHA)

**PLAINTIFF'S PREMOTION STATEMENT**

The Plaintiff, Ricardo Sanchez, Jr., submits this premotion statement pursuant to the Court's February 27, 2026 Order. (Doc. 18). This Freedom of Information Act case arises from the denial of the Plaintiffs' requests for records to the ATF, DEA, and FBI.

## BACKGROUND

In 2009, the Plaintiff was convicted and sentenced to death[1] for drug trafficking, carjacking, and the murder of the Escobedo family on the turnpike roadside in West Palm Beach, Florida. He has always maintained his innocence of the murders for good reason: law enforcement knew that the *Los Zetas* cartel, operating in and around South Florida at the time, was using Mr. Escobedo to spread its footprint. Law enforcement also knew that Mr. Escobedo had failed to pay the

---

[1] On December 23, 2024, the Plaintiff received a Presidential commutation from President Joseph R. Biden, commuting his death sentence to life imprisonment. The Plaintiff's § 2255 motion, where he is litigating guilt phase relief, is presently stayed pending the outcome of FOIA litigation.

cartel for cocaine worth approximately $221,000. Yet, at the Plaintiff's criminal trial, the Government withheld evidence that Mr. Escobedo owed the cartel money; that the day before the murders members of the *Los Zetas* cartel traveled to South Florida to collect the money that Mr. Escobedo owed them; and that Mrs. Escobedo's cell phone traveled from Florida to Texas the day after the murders. That is not all. The murder weapons were never found nor fingerprinted, and the Government relied on the widely discredited and unreliable science of "tool mark evidence" to convict the Plaintiff and his co-defendant.

During the pendency of his § 2255 proceedings, the Plaintiff received discovery from the DEA and other agencies showing that federal law enforcement was tracking the movement of several high-level members of the *Los Zetas* in South Florida at the time of the crimes. The Plaintiff immediately began sending Freedom of Information Act (FOIA) requests to the DEA and other agencies to determine what other information they had to support the Plaintiff's guilt phase claims. The Court in that case encouraged the parties to seek documents through the FOIA to streamline the discovery process in the § 2255 proceedings and stayed and administratively closed the cases of the Plaintiff and his co-defendant pending resolution of the FOIA litigation in this District.

Before the substitution of undersigned counsel, counsel for the Plaintiff filed and litigated several FOIA actions. (Doc. 1 at 5, n. 2). *See, e.g., Chavis v. Department of Justice, et al.*, Case 1:19-cv-170 (stipulated dismissal); *Chavis v. Department of Justice, et al.*, Case 1:19-cv-332 (stipulated dismissal); *Chavis v. Department of*

*Justice, et al.*, Case 1:22-cv-618 (stipulated dismissal); *Chavis v. Department of Justice, et al.*, Case 1:20-cv-638 (summary judgment granted for Defendants). The FOIA requests in those cases suffered from several deficiencies; and in one case, previous counsel for the Plaintiff "did not respond to the Government's proposed statement of material facts." *See* Case 1:20-cv-638, Doc. 18 at 3, n. 2.

In any event, the FOIA requests that form the basis of this lawsuit are different and were meant to streamline the discovery process in § 2255 proceedings, as directed by that Court, by narrowing the scope of documents sought by the Plaintiff's previous counsel and identifying the specific information sought by the Plaintiff. His requests did so. For example, the requests to each agency sought records for twenty-three specific individuals (with DOBs and SSNs provided for a majority) and twelve phone numbers—suspected high-level *Los Zetas* cartel members in and around South Florida at the time of the crimes from cellphone tracking data. For additional context and information, attached to requests to the DEA, the Plaintiff also included the previously withheld reports generated by the agency in and around the time of the murders. Each request was denied summarily and affirmed on administrative appeal. To date, the Plaintiff has not received any records from his FOIA requests.

<u>**ARGUMENT**</u>

The Plaintiff will show that the blanket denials do not satisfy the agencies' burden to show a substantial probability that disclosure of the documents would lead to an invasion of privacy. Specifically, that the exemptions do not "categorically

exempt individuals' identities." *People for the Am. Way Found. v. Nat'l Park Serv.*, 503 F.Supp.2d 284, 304 (D.D.C. 2007).

The Plaintiff will also show that even if the agencies can show a substantial privacy interest, they cannot show that such privacy interests outweigh the public interest in disclosure, especially given the gravity of the case. In *Lindsey v. FBI*, this Court held by Memorandum Opinion and Order that the plaintiffs had demonstrated public interest in a disclosure through evidence of media reports from credible news agencies. Civil Action No. 16-cv-2032, Doc. 16 at 13 (D.D.C. Sept. 20, 2017). The Plaintiff's federal capital murder trial and continued post-conviction media coverage have placed the information related to the FOIA request in the public domain. For example, in 2011—five years after the murders—an article entitled "Five years later, rapid gunfire of Escobedo murders still haunts Port St. Lucie couple" ran in TCPalm newspaper[2], and in 2014—eight years after the murders—an article entitled "Turnpike killers' appeals could move to U.S. Supreme Court" ran in The Palm Beach Post newspaper.[3] The FOIA requests were made fourteen years after the murders. And on January 20, 2025, President Trump directed the Department of Justice to assist and facilitate the state prosecutions of all 37 prisoners whose sentences were

---

[2] Melissa Holsman, *Five years later, rapid gunfire of Escobedo murders still haunts Port St. Lucie couple*, TCPalm (Oct. 7, 2011) (http://archive.tcpalm.com/news/five-years-later-rapid-gunfire-of-escobedo-murders-still-haunts-port-st-lucie-couple--photo-galle-ep-344071162.html).

[3] Daphne Duret, *Turnpike killers' appeals could move to U.S. Supreme Court*, The Palm Beach Post (Feb. 9, 2014) (https://www.palmbeachpost.com/story/news/2014/02/09/turnpike-killers-appeals-could-move/7027573007/).

commuted by President Biden.[4] Authorities in the South Florida area immediately took steps to bring charges against the Plaintiff, drawing additional media scrutiny.[5]

Additionally, any number of individuals identified in the FOIA requests are deceased. In such cases, the agencies bear the responsibility "to ascertain life status" *prior* to withholding the information. *Schrecker v. U.S. Dep't of Justice*, 349 F.3d 657, 661 (D.D.C. 2003). The agencies made no such findings here.

Furthermore, as related to the Plaintiff's pending § 2255 motion explained *infra*, the information in these records contains potentially exculpatory evidence that was impermissibly and unconstitutionally withheld in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), and *Kyles v. Whitley*, 514 U.S. 419 (1995). Instances of government misconduct create an especially high public interest in FOIA cases. *See Trentadue v. Integrity Comm.*, 501 F.3d 1215, 1234 (10th Cir. 2007) ("the public interest in learning of a government employee's misconduct increased as one moves up an agency's hierarchical ladder.").

The Plaintiff will also show that the agencies did not engage in a proper search for responsive records.

**\* \* \***

---

[4] The White House, *Restoring the Death Penalty and Protecting Public Safety* (Jan. 20, 2025) (https://www.whitehouse.gov/presidential-actions/2025/01/restoring-the-death-penalty-and-protecting-public-safety/).

[5] *See, e.g.,* Nick Viviani and Katie Bente, *Florida re-seeks death penalty for killers in 2006 Turnpike slaying after Biden clemency*, WPEC CBS 12 News (May 23, 2025) (https://cbs12.com/news/local/florida-prosecutors-aim-for-death-penalty-for-turnpike-killers-after-biden-gave-them-clemency-palm-beach-st-lucie-ricardo-sanchez-daniel-troya-turnpike-escobedo).

## PREMOTION CONFERENCE

Pursuant to the Court's Order, (Doc. 18), counsel for the parties is available for the following three one-hour periods between 2pm and 4pm for a premotion conference:

**May 14, 2026**

**May 15, 2026**

**May 21, 2026**

## BRIEFING SCHEDULE

Pursuant to the Court's Order, (Doc. 18), the parties jointly propose the following briefing schedule:

- Defendants' motion for summary judgment and/or other dispositive motions shall be filed by **July 23, 2026**;

- Plaintiff's combined opposition to Defendants' motion, and any cross motion for summary judgment shall be filed by **September 8, 2026**;

- Defendants' combined reply in support of its motion for summary judgment and opposition to Plaintiff's cross motion shall be filed by **September 29, 2026**;

- Plaintiff's Reply in further support of his cross motion for summary judgment shall be filed by **October 20, 2026**.

Respectfully submitted,

By: */s/  Luke P. Ihnen*
Luke P. Ihnen (TN BPR 035190)
Assistant Federal Defender
FEDERAL DEFENDER SERVICES
 OF EASTERN TENNESSEE, INC.
800 S. Gay Street, Suite 2400
Knoxville, TN 37929
Ph: (865) 637-7979
Email: Luke_Ihnen@fd.org

*Attorney for the Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served electronically by the Court's CM/ECF service on April 27, 2026, on all counsel or parties of record on the Service List below.

/s/Nancy Hernandez
Nancy Hernandez, Paralegal

## SERVICE LIST

Kimberly A. Stratton
Assistant United States Attorney
United States Attorney's Office
601 D. Street, NW
Washington, DC 20530
Telephone: (202) 417-4216
kimberly.stratton@usdoj.gov

Attorney for Defendant's United States of America

- 7 -